UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANDREW FIELDS,

               Petitioner,

               - against -

N.Y.S.D.O.C.C.S.,

               Respondent.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-00009 (PKC)

PAMELA K CHEN, United States District Judge:

Before the Court is Petitioner Andrew Fields's petition, which he brings *pro se*, for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254.  For the reasons stated below, the petition is denied.

## BACKGROUND[1]

### I.    Factual Background

#### A.    Petitioner's August 30, 2013 Arrest

On August 30, 2013, Donald Bradley ("Bradley") walked into an apartment building at 106-35 159th Street in Queens County, New York to visit his friend Bobby Garcia ("Garcia"). (Transcript ("Tr."),[2] Dkt. 31-2, at 578:16–579:2.)  In the hall of Garcia's apartment building, Petitioner and Marly Senat ("Senat") who had entered the building minutes before Bradley (Tr. 606:5–608:22), approached Bradley from behind, punched Bradley in the face, and put him into a

---

[1] Because Petitioner was convicted at trial, the Court presumes the facts set forth herein as established and views them in the light most favorable to the prosecution.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

[2] References to "Tr." refer to the numbering created by the Court's electronic filing system, or "ECF," within the transcript of the state court proceedings (Dkt. 31-2)—not to the internal pagination thereof.

headlock.  (Tr. 582–86.)  While Petitioner was holding Bradley in a headlock, Senat approached Bradley, told him to "shut up," and hit him in the face.  (Tr. 586:5–25.)  Senat then showed a gun to Bradley, and Bradley stopped struggling.  (Tr. 587:3–4, 22–23.)  Shortly thereafter, Petitioner tightened his headlock on Bradley; as Bradley lost consciousness, Petitioner and Senat rummaged through his pockets.  (Tr. 587:24–588:6.)  When Bradley came to, his cell phone, car keys, wallet and approximately $1,160 in cash were missing from his person.  (Tr. 588:20–589:4.)

"[M]aybe a couple of days afterward," Bradley called his uncle, New York City Police Department ("NYPD") Chief Phillip Banks, a high-ranking member of the NYPD, to report the incident.  (Tr. 590:21–591:23.)  About a week later, Bradley filed an official complaint with the NYPD.  (Tr. 592:7–592:19.)  On September 17, 2013, NYPD officers attempted to pull Petitioner and Senat over for driving a stolen Toyota Sienna minivan down Guy R. Brewer Boulevard in Queens, New York; Petitioner, who was driving when the officers approached him, sped away and crashed the vehicle.  (Tr. 802–809.)  Senat was unable to flee because the passenger door was stuck; Petitioner ran from the car, but was soon apprehended.  (Tr. 809:14–813.)  A loaded revolver was recovered from the vehicle.  (Tr. 812:12–20.)  Later that day, Bradley identified Petitioner and Senat in two separate police line-ups as the individuals who had robbed him on August 30, 2013. (Tr. 595:18–597:11.)

Petitioner and Senat were arrested on two sets of charges, one relating to the August 30, 2013 armed robbery of Bradley and the other relating to Petitioner's and Senat's September 17, 2013 attempt to flee and avoid being stopped and arrested by the police.  (State Court Record

2

("Record"),[3] at ECF[4] 213–14.)  Both sets of charges were later joined in a single indictment, Indictment Number 2916/13, returned against Petitioner and Senat on December 5, 2013.  (*Id.* at ECF 212–14.)

### B.    Petitioner's Severance Motions

Prior to trial, Petitioner moved to sever trial with respect to his two sets of charges based on his August 30, 2013 and September 17, 2013 arrests.  (*Id.* at ECF 214.)  Petitioner argued, in sum and substance, that the two incidents were entirely separate and distinct "criminal transactions" under C.P.L. § 40.10(2), and that a single trial on both sets of charges "misled the Grand Jury into speculating that" the same gun recovered on September 17 was also used in the robbery on August 30, or that the "Grand Jury [was] improperly [led to] conclude criminal propensity rather than considering the evidence separately for each of the criminal transactions." (*Id.* at ECF 214, 217.)  The Honorable Marcia P. Hirsch of the Queens County Supreme Court denied Petitioner's motion, finding that the charges were properly joined pursuant to C.P.L. § 200.20[2][b].  (*Id.* at ECF 233.)

### C.    State Court Trial

Petitioner's and Senat's jury trial began on April 28, 2015 and ended May 18, 2015.  (Tr. 2.)  Donald Bradley testified extensively as to the events of August 30, 2013, including that Senat showed him a "chrome and black" gun during his robbery (Tr. 587:18–19), and about identifying Petitioner and Marly Senat in line-ups.  (Tr. 577–99.)  The prosecution also presented the testimony of Detective Richard McCarty regarding the investigation of the August 30, 2013 robbery,

---

[3] References to the "Record" refer to the State Court Record filed at Dkt. 31-1.

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

including the call he received from his former partner on September 17 and the subsequent line-up he conducted with Petitioner and Senat (Tr. 752–61), and video surveillance footage showing two men Bradley identified as Defendants entering and leaving the lobby, with Bradley walking out minutes later (Tr. 606–12).  In addition, the prosecution introduced the testimony of NYPD Officers Derek Webber, who testified regarding the moment of Petitioner's arrest on September 17 (Tr. 741–47); Robert DeFerrari, an officer who pursued Defendants on September 17 before apprehending Senat and the loaded revolver from the stolen car (Tr. 800–19); Detective Dominic Cappiello, a firearms examiner in the Forensic Investigation Division, who testified that the recovered revolver was operable (Tr. 831–42); and the stolen car's owner (Tr. 737–41).

During Bradley's testimony and throughout the trial, the Honorable Ronald Hollie, the presiding Queens Supreme Court Justice, asked numerous questions of the witnesses.  Justice Hollie asked Bradley to clarify who had asked Bradley for a cigarette before the incident (Tr. 580:13–16), whether Bradley had testified that Fields first punched Bradley in the face (Tr. 583:14 –584:25), how Petitioner had approached Bradley, and who had held Bradley in a headlock (585:20–586:4).  Justice Hollie also asked Bradley about various other details pertaining to the setting of the mugging (Tr. 583:14 –584:25), about where Senat was standing when Bradley first saw him, and what Senat had said to Bradley.  (Tr. 586:5–23.)  In addition, the judge asked Bradley specific questions about what items were taken from him (Tr. 588:24–589:10), the circumstances surrounding Bradley's interactions with friends on the street before going to see Bobby Garcia (Tr. 593:25–595:16; 643:17–644:25), Bradley's knowledge of the video surveillance of the incident (Tr. 600:10–601:21; 609–12), and Bradley's disability and employment status (Tr. 619:5–621:16).  The judge also asked questions of other witnesses, including Detective Richard McCarty regarding

his conversations with Bradley before the line-ups and what Bradley told the detective about what items allegedly had been taken from him.  (Tr. 770:6–773:13.)

Petitioner and Senat again moved at trial to sever the indictments.  After Bradley and Detective McCarty testified, Petitioner moved for severance on grounds that "Det. McCarty made it clear that the complainant described the gun that was allegedly used in the alleged robbery as a semi automatic gun in all the paper work within this case," whereas the recovered gun was a revolver.  (Tr. 798:7–799:3.)  The Court denied the motion without explanation.  (Tr. 799:4–5.)  At the close of the prosecution's case, Petitioner argued that the Government's evidence regarding the gun used in the alleged robbery and the gun recovered from the stolen car were "descriptions of 2 different guns and 2 different firing mechanisms"—and since the firearm was the link between the incidents "there is no basis to join the case together."  (Tr. 848:6–10.)

Near the end of the trial, Petitioner's counsel asked the Court to give a "missing witness" instruction as to several witnesses: (1) Garcia, who "would have been in a position to testify as to [Bradley's] physical appearance and injuries or . . . lack thereof" after the alleged robbery; (2) Bradley's mother and stepfather, who had brought Bradley an extra set of keys after the robbery and also would have been in a position to testify as to Bradley's injuries; and (3) Bradley's uncle, NYPD Chief Phillip Banks, who could have verified that Bradley contacted him about the August 30 robbery soon after it had occurred.  (Tr. 878:23–879:13.)  The Court rejected Petitioner's "missing witness" charge as to all potential witnesses.  (Tr. 880:22–881:2.)

Petitioner was found guilty of Robbery in the First Degree (N.Y. Penal Law §160.15(4)), two counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10(1), (2)(a)), Strangulation in the Second Degree (N.Y. Penal Law § 121.12), two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(1)(b), (3)) and Criminal Possession of Stolen

Property in the Fourth Degree (N.Y. Penal Law § 165.45(5)).  (Tr. 1061–66.)  Senat was convicted

on the same charges.  (Tr. 1061:23–1063:3.)  On July 21, 2015, the trial court sentenced Petitioner

to an aggregate sentence of 15 years in prison, to be followed by five years of post-release

supervision.  (Tr. 1086–1103.)

## II.    Procedural Background

### A.    Petitioner's Direct Appeal

In  March  2017,  Petitioner's  post-conviction  attorney  filed  a  direct  appeal  with  the

Appellate  Division,  Second  Department  ("Appellate  Division").    (Record,  at  ECF  1–46.)

Petitioner raised three claims in his counseled brief: (1) the trial court conducted excessive and

prejudicial questioning of trial witnesses, warranting a new trial; (2) the trial court abused its

discretion when it denied the severance motions, and (3) the trial court abused its discretion when

it failed to grant Petitioner's missing witness charge.[5]  (*Id.* at ECF 6.)  Petitioner also filed a *pro

se* brief raising additional claims: (1) the medical evidence of Bradley's physical injury was

insufficient  to  support  conviction;  and  (2)  the  police  sergeant  who  recognized  Petitioner  on

surveillance video from the apartment building lobby where the August 30 robbery occurred did

not testify at trial, which denied Petitioner his due process right to a fair trial and the right to

confront his accuser, and (3) reiterating the severance argument.  (Record, at ECF 47–61.)

On November 21, 2018, the Appellate Division affirmed Petitioner's convictions on all

counts.  *People v. Fields,* 166 A.D.3d 897 (N.Y. App. Div. 2018).  The New York Court of Appeals

denied Petitioner's motion for leave to appeal on February 19, 2019, and denied Petitioner's

applications for reconsideration on May 28, 2019.  *People v. Fields*, 32 N.Y.3d 1204 (2019),

---

[5] Although Petitioner seemed to seek a missing witness charge as to multiple potential witnesses at trial, he only appealed the denial regarding Bobby Garcia.  (Record, at ECF 37–43.)

*recons. Denied*, 33 N.Y.3d 1031 (2019).   The Appellate Division also denied Petitioner's application for re-argument.  (Record, at ECF 283.)

### B.      Petitioner's State Court Motion to Vacate His Conviction

On August 3, 2021, Petitioner filed a Motion to Vacate his Conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10(1)(h) ("440 Motion") with the trial court.  (*Id.*at ECF 337.)  Petitioner raised two claims: (1) the trial court conducted excessive and prejudicial questioning of trial witnesses in violation of Petitioner's Fourteenth Amendment due process right to a fair trial, and (2) Petitioner received ineffective assistance of counsel because his attorney did not object to the trial court's excessive and prejudicial questioning, thereby failing to preserve this issue for appellate review.  (*Id.* at ECF 321–37.)  The trial court denied Petitioner's motion in its entirety, finding the first argument both procedurally barred and meritless, and the second argument meritless.  (*Id.* at ECF 368–78.)  The Appellate Division denied leave to appeal.  (*Id.* at ECF 395.)

### C.      Petitioner's Federal *Habeas* Petition

On January 13, 2020, Petitioner timely filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C § 2254.  (Dkt. 1, at ECF 1.)  On December 16, 2020, Petitioner first requested a stay and abeyance pending exhaustion of state remedies, and filed his 440 Motion in state court. (Dkt. 16.)  In response, the Court ordered Petitioner to submit a letter explaining "(1) what claim(s) he seeks to exhaust and through which state remedies, (2) why he failed to exhaust his remedies as to those claims prior to filing the instant petition, and (3) why those claims have merit." (12/21/2020 Docket Order.)  After multiple extensions, on August 16, 2021, Petitioner filed his 440 Motion.  (Dkts. 17, 18, 21.)  Shortly thereafter, this Court stayed the case pending exhaustion

of Petitioner's claims in state court.  (8/18/2021 Docket Order).  On January 12, 2022, while the case was still stayed, the Court issued a docket order administratively closing the case pending either party's motion to reopen it; instructing Petitioner to amend his petition to add all additional claims not listed in the petition so as to avoid any time bar that could apply to those added claims; and advising Petitioner that he could be barred from reopening this case if he unreasonably delayed exhausting his claims in state court or reopening the case in this Court after exhaustion.  (1/12/2022 Docket Order.)  On February 16, 2022, Respondent mailed the state court record to Petitioner. (Dkt. 24.)

On September 12, 2022, Petitioner moved to reopen the case, and to amend his petition for writ of *habeas corpus*; Respondent consented, and the Court granted the motion to reopen and amend the petition.  (Dkts. 25–27; 9/26/2022 Docket Order.)  Respondent answered, filed the state court record, and served both on Petitioner on December 12, 2022.  (Respondent's Answer ("Answer"), Dkt. 30; State Court Record and Transcript, Dkt. 31; Certificate of Service, Dkt. 32.) On January 20, 2023, Petitioner filed the Amended Petition to include a claim of ineffective assistance of counsel.  (Amended Petition ("Am. Pet."), Dkt. 33.)[6]  The Amended Petition was fully briefed on April 25, 2023.  (Petitioner's Reply ("Pet.'s Rep."), Dkt. 40.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of *habeas corpus* by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To obtain relief,

---

[6] Petitioner filed the same Amended Petition a second time on January 23, 2023.  (Dkt. 34.)

a petitioner must show that the state court decision, having been "adjudicated on the merits in State court proceedings," is either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013). A claim is "adjudicated on the merits" in the state court if the state court "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).

A state court's decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. *Bell v. Cone*, 543 U.S. 447, 452–53 (2005) (internal citation and quotation marks omitted); *see Ennis v. Artus*, No. 09-CV-10157 (DAB) (GWG), 2011 WL 3585954, at *7 (S.D.N.Y. Aug. 12, 2011) (same) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's decision "involve[s] an unreasonable application of" Supreme Court precedent if there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, a state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). These standards are "'difficult to meet,' because the purpose of AEDPA is to ensure that federal *habeas* relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and internal quotation marks omitted).

A federal court may not grant *habeas* relief to a prisoner in state custody unless the prisoner has exhausted state-court remedies. *See* 28 U.S.C. § 2254(b)(1); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) ("If anything is settled in *habeas corpus* jurisprudence, it is that a federal court may not grant the *habeas* petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]" (internal quotation marks and citation omitted)). This exhaustion requirement includes two parts. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (emphasis omitted) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In New York, this means a *habeas* petitioner must first appeal the relevant conviction to the Appellate Division, and then seek further review by applying to the Court of Appeals for a certificate granting leave to appeal. *Id.* at 74 (citing, *inter alia, Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)). Second, *habeas* petitioners must have "'*fairly presented* [their] claims to the state courts,' such that the state court had a fair opportunity to act." *Id.* at 73 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Aparicio*, 269 F.3d at 89–90 ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." (internal quotation marks and citations omitted)).

## DISCUSSION

Petitioner raises five claims for this Court's review: (1) the trial court's excessive and prejudicial questioning of trial witnesses violated his due process right to a fair trial (Dkt. 1, at ECF 5; Dkt. 33, at 2); (2) his trial counsel's failure to object to the trial court's excessive questioning constituted ineffective assistance (*see generally* Dkt. 33); (3) the trial court's denial of

severance violated Petitioner's due process right to a fair trial (Dkt. 1, at ECF 7); (4) the trial court's refusal to give a "missing witness" instruction violated Petitioner's due process right to a fair trial (*id.* at ECF 8); and (5) the failure of the police officer who had identified Petitioner on the August 30 surveillance video to testify at trial violated Petitioner's due process rights to a fair trial and to confront his accuser (*id.* at ECF 10).

For the reasons set forth below, the Court denies Petitioner's *habeas* petition in its entirety.

## I.      Petitioner's Judicial Interference Claim is Procedurally Barred

In his direct appeal in state court, Petitioner argued that the trial court conducted excessive and prejudicial questioning of trial witnesses, which violated Petitioner's Fourteenth Amendment due process right to a fair trial.  (Record, at ECF 10–28.)  While acknowledging that his trial counsel "did not object to any of the Court's judicial questioning," Petitioner argued that "[n]o objection was necessary . . . to preserve this error for appeal," in light of the Appellate Division's ruling weeks before in a different case "that the identical error, by the same judge, was subject to [that] Court's interest of justice jurisdiction."  (Record, at ECF 25–26 (citing *People v. Davis*, 147 A.D. 3d 1077, 1079 (N.Y. App. Div. 2017)).)  The Appellate Division disagreed, holding that Petitioner's claim was unpreserved for appellate review, and declined to consider the claim in the "interest of justice."  *Fields*, 166 A.D. 3d at 898.  Petitioner raised the same claim in his 440 Motion.  There, the trial court held that Petitioner's claim was procedurally barred under CPL § 440.10(2)(c), as there were sufficient facts on the record to permit appellate review of the claim. (Record, at ECF 372–73).

A federal court "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."  *Davila v. Davis*, 582 U.S. 521, 527 (2017).  "To qualify as an adequate

procedural ground, capable of barring federal *habeas* review, a state rule must be firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (internal quotation marks and citation omitted).  A procedural ground is independent when the state court relies solely on that law for its disposition and clearly and expressly states that the judgment rests on that law.  *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018).

Under New York State law, to preserve an issue for appeal, a party must lodge a contemporaneous and specific objection at trial.  N.Y. Crim. Proc. Law § 470.05(2).  The Second Circuit has long recognized New York's "contemporaneous objection rule" to be "a firmly established and regularly followed New York procedural rule" that "constitutes an independent and adequate state law ground."  *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011); *see also Richardson v. Greene*, 497 F.3d 212, 217–19 (2d Cir. 2007) (same).   The rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."  *People v. Luperon*, 623 N.Y.S.2d 735, 738–39 (1995).  Thus, a state court decision based on contemporaneous-objection grounds generally precludes federal *habeas* review.  *See Downs*, 657 F.3d at 103–04.

However, "when 'a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a "contemporaneous objection" rule,' a federal court may review the merits of such a claim when the state court 'unevenly' applies [the] rule."  *Silverman v. Edwards*, 69 F. App'x 489, 491 (2d Cir. 2003) (quoting *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) and citing *Williams v. Lane*, 826 F.2d 654, 659 (7th Cir. 1987)).  But "an allegedly uneven application of state procedural default rules *in general* does not necessarily establish that the application of a procedural default

rule in a particular case is not 'adequate." *Wedra v. Lefevre*, 988 F.2d 334, 340 (2d Cir. 1993) (quoting *Andrews v. Deland*, 943 F.2d 1162, 1190 (10th Cir. 1991), *cert. denied*, 502 U.S. 1110 (1992)).

Here, the Appellate Division determined that Petitioner had failed to preserve his judicial intervention claim via contemporaneous objection at trial, and did not review the claim on its merits. *Fields,* 166 A.D.3d at 898.  Therefore, the Appellate Division's decision bars this Court's review of Petitioner's claim, unless the Court finds that the Appellate Division unevenly applied the contemporaneous-objection rule in this case and that its application of the rule therefore is not "adequate" to bar federal *habeas* review.  *See Davila*, 582 U.S. at 527 (holding that federal court may not review federal claims "that the state court denied based on an adequate and independent state procedural rule"); *Johnson*, 578 U.S. at 608 ("To qualify as an adequate procedural ground, capable of barring federal *habeas* review, a state rule must be firmly established and regularly followed.").

Petitioner's argument about the inadequacy of the Appellate Division's application of the contemporaneous-objection rule is based on the fact that the Appellate Division granted a number of appeals alleging excessive and prejudicial questioning by Justice Hollie, "in the interest of justice," despite defense counsel having failed to object at trial.  (Record, at ECF 10–24.)  *See People v. Robinson*, 151 A.D.3d 758, 759 (N.Y. App. Div. 2017); *People v. Hinds*, 160 A.D.3d 983, 984 (N.Y. App. Div. 2018); *People v. Sookdeo*, 164 A.D.3d 1268, 1269 (N.Y. App. Div. 2018); *People v. Ramsey*, 174 A.D.3d 651, 652 (N.Y. App. Div. 2019); *People v. Savillo*, 185 A.D.3d 840, 842 (N.Y. App. Div. 2020); *People v. Martinez*, 199 A.D.3d 834 (N.Y. App. Div. 2021).  Even so, the Court does not find that the Appellate Division's decision not to review Petitioner's excessive questioning claim constitutes an "uneven application" of the

contemporaneous-objection rule.  As the Second Circuit "found in connection with another New York rule that permits exceptions, even if New York law allows 'some discretion to be exercised,' the application of the procedural default rule in a particular case remains appropriate so long as the rule is 'evenhandedly' applied 'to all similar claims.'"  *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007) (quoting *Wedra*, 988 F.2d at 340).  "Similarly, in *Glenn v. Bartlett*, [the Circuit] found a procedural bar, based on the defendant's failure to preserve an objection at trial, even though the state court acknowledged that it could have reversed the conviction 'in the interest of justice.'"  *Id.* (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996)).

The Appellate Division's exercise of its discretion to apply the contemporaneous-objection rule in Petitioner's case, while not applying it in other cases involving alleged judicial intervention by Justice Hollie, in itself, does not make the Appellate Division's application of the rule here "not adequate."  *See Wedra*, 988 F.2d at 340 ("'[A]n allegedly uneven application of state procedural default rules *in general* does not necessarily establish that the application of a procedural default rule in a particular case is not 'adequate.'" (quoting *Andrews*, 943 F.2d at 1190)).  As the Supreme Court made clear in *Beard v. Kindler*:

> We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal *habeas* review.  Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine.  To the contrary, a discretionary rule can be "firmly established" and "regularly followed"—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.

558 U.S. 53, 60–61 (2009).

In *Cotto v. Herbert,* the Second Circuit identified three "guideposts" for courts to consider in determining the adequacy of a state court's application of a procedural default rule.  331 F.3d 217, 240 (2d Cir. 2003) (stating that "the adequacy of a state procedural bar is determined with reference to the 'particular application' of the rule") (quoting *Lee v.*

14

*Kemna*, 534 U.S. 362, 387 (2002)).  None of these point to a finding that the Appellate Division's application of the contemporaneous-objection rule in this case was inadequate. The first, "whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision," is inapplicable here.  *Clark v. Perez*, 510 F.3d 382, 391 n.4 (2d Cir. 2008) (holding that "the failure altogether to raise an issue cannot be actually relied on because no court has been notified that the issue even exists").  The second guidepost—"whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented"—also clearly favors finding that the contemporaneous-objection rule is adequate with respect to Petitioner's judicial interference claim.  *See, e.g.*, *Adams v. Keyser*, No. 16-CV-129 (GBD) (AJP), 2016 WL 4429889, at *24 (S.D.N.Y. Aug. 22, 2016) ("The requirement that a defendant preserve a claim of judicial interference by appropriate objection or motion for a mistrial . . . is firmly established and regularly followed by New York state courts." (collecting cases)).  And third, Petitioner clearly did not "substantially compl[y] with the rule given the realities of trial" when he failed to raise this issue in any way before the trial court.  *Cotto*, 331 F.3d at 240.

"Because of comity concerns, a decision that a state procedural rule is inadequate should not be made 'lightly or without clear support in state law.'"  *Murden*, 497 F.3d at 192 (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted)).  Federal courts find applications of the contemporaneous-objection rule inadequate sparingly, for example, where the "defense counsel's request at trial was sufficient to preserve the issue" at trial, but the Appellate Division erroneously found otherwise.  *Silverman*, 69 F. App'x at 491.  Here, it is undisputed that Petitioner failed to lodge any objection or move for a

15

mistrial on the basis of the judicial interference that he only alleged post-trial.  As such, the Appellate Division's decision to apply the contemporaneous-objection rule was a valid application of a discretionary state procedural bar and constitutes "an independent and adequate state ground foreclosing federal *habeas* review." *Wade v. Melecio*, No. 21-CV-9138 (GHW) (JLC), 2023 WL 2152489, at *11 (S.D.N.Y. Feb. 22, 2023), *report and recommendation adopted,* 2023 WL 2500676 (S.D.N.Y. Mar. 14, 2023).   Therefore, Petitioner may obtain review of his claim only if he demonstrates "cause and prejudice for the procedural default" or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (internal quotation marks and citations omitted).  Petitioner does not maintain that he is actually innocent.  And although Petitioner does not argue "cause and prejudice" in so many words, he does argue that his counsel was ineffective for failing to preserve the judicial interference argument at trial.  (*See* Dkt. 5, at ECF 2.)  *Terrell v. Kickbush*, No. 17-CV-7027 (JFB), 2019 WL 3859512, at *5 (E.D.N.Y. Aug. 16, 2019) ("A petitioner can demonstrate cause . . . [if] the procedural default was the result of ineffective assistance of counsel." (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)).  Because Petitioner's ineffective assistance arguments fail, *see infra* Discussion Section II, he cannot overcome the procedural bar to federal review of his judicial interference claim, and it is denied as procedurally barred.[7]

---

[7] The Court notes that, although Petitioner's constitutional claim is procedurally barred from federal review, Justice Hollie's conduct in this case is similar in nature—although not necessarily in degree—with his conduct in other cases where the Appellate Division has found defendants' rights to have been violated.  In *People v. Robinson*, for example, the Appellate Division found that Justice Hollie "effectively took over the direct examination of a complaining witness while the prosecutor was eliciting details related to . . . the physical altercations at issue" and Justice Hollie "posed at least eight fact-specific questions about [the witness's] physical

## II.    Petitioner's Trial Counsel Was Not Ineffective

location in relation to that of the attacker." 151 A.D. 3d at 759; *see also Ramsey*, 174 A.D. at 652, (describing Justice Hollie as "engag[ing] in extensive questioning of witnesses, usurp[ing] the roles of the attorneys, elicit[ing] and assist[ing] in developing facts damaging to the defense on direct examination of the People's witnesses, bolster[ing] the witnesses' credibility, interrupt[ing] cross-examination, and generally create[ing] the impression that it was an advocate on behalf of the People."); *see also People v. Davis*, 147 A.D. 3d at 1079 (reversing conviction and noting, "[i]n last analysis, [the trial judge] should be guided by the principle that his [or her] function is to protect the record, not to make it.  The line is crossed when the judge takes on either the function or appearance of an advocate at trial.  Indeed, even proper questions from trial judges present significant risks of prejudicial unfairness, particularly when the trial judge indulges in an extended questioning of witnesses." (internal citations and quotations omitted)).

Here, Justice Hollie asked Bradley, the complaining witness, seven consecutive questions about Petitioner's positioning relative to him as the alleged assault unfolded (Tr. 583:14–584:19)—and then, after the Government asked several questions, the Court interjected again to ask seven more questions about the sequence of the attack and the actions of his alleged attackers (Tr. 585:20–596:23).   The Court intervened several more times during the complaining witness's direct examination to develop key aspects of the record by asking between five and seven consecutive fact-specific questions.  (Tr. 588:24–589:10; 590:5–15; 595:6–17; 600:5–25; 601:1–22; 600:13–22; 611:14–612:17; 619:5–621:16; 590:12–17 ("The Court: So you contacted relatives and they came into Queens. The Witness: Yes. The Court: People.  [The Government]: That was my next question your Honor.  Where did you go immediately after the robbery?").)  Justice Hollie also took over defense counsel's questioning of Detective Robert McCarty regarding the conversations he had with Bradley before the lineups in which he identified Petitioner and his co-defendant, eliciting testimony regarding the items Bradley reported as having been stolen (Tr. 770, 771:3–22, 772:13–773:13), and regarding Bradley's description of the alleged perpetrators of his robbery  (Tr. 778:20–779:11; 781:22–782:20).   Justice Hollie also asked Detective Robert DeFerrari numerous questions about the pursuit of Petitioner and Senat on September 7, 2013. (Tr. 807:22–808:14; 809:23–812:2; Tr. 813:10–814:5; *see People v. Hinds*, 160 A.D. at 984 ("The court elicited step-by-step details from several officers regarding their observations and actions during their apprehension of the defendant").)   The Court did not make similar interventions to develop facts relating to Petitioner's defense, but instead repeatedly admonished defense counsel (Tr. 635:9–15, 601:1–22, 629:2–8), denied defense attempts to impeach the complaining witness (Tr. 636:21–638:11, 720:4–24) and testifying officers (Tr. 770:6–771:22), and elicited facts that defense counsel did not intend to seek (Tr. 644:6–21).

However, in light of the procedural bar on federal habeas review as to this claim, the "substantial burden of showing reversible error," *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir. 1990), and Justice Hollie's use of a curative instruction (Tr. 960:20–25), the Court does not make a determination as to whether the trial court engaged in excessive and prejudicial questioning that deprived Petitioner of his right to a fair trial.

Petitioner contends that he received ineffective assistance of counsel because his attorney failed to object to the trial court's frequent questioning of witnesses.  (Dkt. 33.)  Petitioner also raised this claim in his 440 Motion.  In denying that motion, the trial court found that Petitioner's ineffective assistance claim was "not procedurally barred," but that it lacked merit.  (Record, at ECF 376 (finding that Petitioner "failed to show that counsel's lack of objecting to the trial court's actions deprived him the effective assistance of counsel.").)  Therefore, Petitioner's ineffective assistance claim is subject to federal *habeas* review and entitled to AEDPA deference, which only permits *habeas* relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for ineffective assistance of counsel claims: (1) "that [the] attorney's performance 'fell below an objective standard of reasonableness'"; and (2) "that there was prejudice, meaning a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Tavarez v. Larkin*, 814 F.3d 644, 648 (2d Cir. 2016) (quoting *Strickland*, 466 U.S. at 688, 694).  Under AEDPA, "it is not enough to convince a federal *habeas* court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly."  *Cone*, 535 U.S. at 699.  "[A] petitioner must show 'that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.'"  *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *3 (2d Cir. Sept. 29, 2021) (quoting *Cone*, 535 U.S. at 699); *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (describing review of state-court applications of *Strickland* in the *habeas* context as "doubly deferential" and "highly deferential"); *Rosario v. Ercole*, 601

18

F.3d 118, 123 (2d Cir. 2010) ("[S]tate courts are granted even more latitude to reasonably determine that a defendant has not satisfied that [*Strickland*] standard." (cleaned up)).  Further, "[t]he more general the rule [applied by the state court], the more leeway courts have in reaching outcomes in case by case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 653 (2004).

Petitioner argues that his attorney's performance was deficient because despite believing that the trial court's questions were excessive and prejudicial, Petitioner's counsel failed to object to the court's questions.  (Dkt. 33, at 2, 3.)  Further, Petitioner contends that but for counsel's failure to object, there is a reasonable probability that the result of the proceedings would have been different.  (Dkt. 33, at 4 ("If counsel would have inform [sic] the court of this [prejudicial questioning] from its onset, than [sic] the court would have had a chance to cure this misconduct, refrained from continuing to question the witnesses in that manner and given Petitioner a chance of justice with a fair trial.").)

The trial court examined Petitioner's ineffective assistance claim under New York's constitutional standard for ineffective assistance, which requires that a defendant receive "meaningful representation," and "is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case."  (Record, at ECF 376 (quoting *People v. Benevento*, 91 N.Y.2d 708, 712, 714 (1998)).)  "The Second Circuit has repeatedly recognized that the New York 'meaningful representation' standard is not contrary to the *Strickland* standard. . . . For this reason, '[t]he only avenue of reprieve available to [Petitioner] then is to establish that the state court unreasonably applied *Strickland*.'"  *Arena v. Kaplan*, 952 F.Supp.2d 468, 489 (E.D.N.Y. 2013) (internal citations omitted) (quoting *Rosario*, 601 F.3d at 126).

As to the first prong—trial counsel's allegedly substandard performance—Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Cone*, 535 U.S. at 698.  The decision of when to object and on what grounds is a matter of trial strategy and tactics, and is "virtually unchallengeable absent exceptional grounds for doing so." *Broxmeyer v. United States*, 661 F. App'x. 744, 748 (2d Cir. 2016) (summary order) (citation omitted).  While Petitioner's counsel might have felt that Justice Hollie's frequent questioning was detrimental to Petitioner, she also could have reasonably made the strategic calculation that registering a complaint with the judge carried greater risks than dealing with the results of that questioning through cross-examination and/or argument.  Further, although the trial judge did intervene on numerous occasions, many of his interventions were to clarify the witness's testimony and were not explicitly biased or prejudicial.  Neutral questions posed by the court can illicit responses that are injurious to the defense, but that does not make them improper or violative of a defendant's right to a fair trial. *Daye v. Att'y Gen. of State of N.Y.*, 712 F.2d 1566, 1572 (2d Cir. 1983).  Therefore, counsel's decision not to object to questions posed by the trial court—especially where those questions merely clarified admissible and relevant testimony—does not fall below an objective standard of reasonable performance.

Further, Petitioner has not established how the outcome of the proceedings would have been different if counsel had objected to the judge's questioning. *Tavarez*, 814 F.3d at 648.  Even if the Petitioner's counsel had objected to that questioning, there was "no significant probability" that Petitioner would have been acquitted. *People v. Vasquez*, 76 N.Y.2d 722, 725 (N.Y. 1990).  Given the victim, eyewitness, and law enforcement testimony, and video surveillance evidence, presented to the jury, there was overwhelming evidence of Petitioner's guilt, and Petitioner has

provided no basis for finding that the verdict would have been different if his counsel had objected to the trial court's questions.  Thus, Petitioner was not prejudiced.

Accordingly, the state court did not unreasonably apply *Strickland*, and Petitioner's ineffective assistance of counsel claim is denied as meritless.

## III.    Petitioner's Severance Claim Fails on the Merits

Petitioner alleges that his Fourteenth Amendment due process right to a fair trial was violated when the trial court denied his motion to sever for trial the charges stemming from the alleged August 30 robbery from those stemming from the events of September 17.  (Dkt. 1, at ECF 7 ("The 2 case's [sic] are not from the same incident, they are not a continuous incident, they do not occur on the same day, they are not similar in criminal statu[t]e and nothing of the two have anything in common to combine them.").)  Petitioner raised this claim on direct appeal.  In affirming the trial court's denials of Petitioner's severance motions, the Appellate Division found that "the nature of the evidence for each of the offenses was material and admissible as evidence upon the trial of the other counts in the indictment."  *Fields,* 166 A.D.3d at 897.  The Appellate Division also held that the trial court lacked the authority to sever the counts, since the offenses "were properly joined in one indictment from the outset" pursuant to CPL § 200.20(2)(b).  *Id.* Petitioner's appeal application to the New York Court of Appeals reiterated all of the claims from his direct appeal, including the severance claim.  (Record, at ECF 284.)  He has therefore properly exhausted his state law remedies with respect to this claim, and it is subject to AEDPA deference.

The improper joinder of charges against a defendant is a matter of state law and does not amount, on its own, to a constitutional violation.  *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72 (2d Cir. 2011) (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)); *McCall v. Artus*, No. 06-CV-3365 (SAS) (DF), 2008 WL 4501834, at *8 (S.D.N.Y.

Sept. 29, 2008) ("As a preliminary matter, it should be stressed that the issue for this Court is not whether the consolidation of the indictments in this case was proper under state law" because "[f]ederal *habeas* relief 'does not lie for errors of state law.'" (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "Joinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (internal quotations marks and citations omitted). In evaluating whether the joinder of claims rises to the level of a constitutional violation, only the consequences of that action—not the joinder itself—can be assessed. *Conroy v. Racette*, No. 14-CV-5832 (JMA), 2017 WL 2881137, at *13 (E.D.N.Y. July 6, 2017) (quoting *Herring*, 11 F.3d at 377). Therefore, to succeed on a federal *habeas* claim of improper joinder, Petitioner must "go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." *Herring*, 11 F.3d at 377–78.

Here, Petitioner fails to show that he was actually prejudiced as a result of the August 30 and September 17 charges being joined into a single indictment and for trial. On direct appeal, Petitioner argued that he was prejudiced "because proof of the identity of the robbers was not strong," and "the jury may have relied on the flight and apprehension" evidence from Petitioner's September 17 arrest to prove the robbery crime on August 30. (Record, at ECF 35–36.) Even assuming that evidence relating to the two arrests bolstered each other—a perfectly logical assumption—that fact did not "actually render petitioner's state trial fundamentally unfair and hence, violative of due process." *Herring*, 11 F.3d at 377 (noting that the Supreme Court "explicitly accept[s]" that prejudicial effect will inhere when several crimes are tried together, nevertheless, "[j]oinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process."). This

22

is because the prosecution was entitled to use the evidence from the September 17 arrest to prove the identities of the perpetrators of the August 30 robbery.  CPL § 200.20(2)(b) allows joinder of offenses based on separate criminal acts into one indictment where "proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first[.]"  Here, the charges from the two incidents were necessarily and inextricably related: the gun recovered on September 17 was material and admissible evidence of both Petitioner's role in the August 30 robbery and his relationship with co-defendant Senat.  (Record, at ECF 91–93.)  Thus, evidence relating to Petitioner's and Senat's September 17 arrest was properly admitted at trial as proof of their involvement in the August 30 robbery.  *Dayton v. LaValley*, No. 11-CV-1261 (DG) (CLP), 2021 WL 3848148, at \*14 (E.D.N.Y. July 29, 2021) (denying a severance *habeas* claim where "the same evidence would have been presented" at both severed trials and severance "would create an undue burden upon the People to necessarily bring many of the same witnesses forward once again." (citation omitted)).  Petitioner's argument that there were fundamental discrepancies between Bradley's description of the gun used in his robbery and the gun recovered on September 17 is also unpersuasive; Bradley described a "chrome and black" handgun that was largely consistent with the gun recovered on September 17.  (*Compare* Tr. 686:12–16 (describing "top" of gun as chrome and handle as black) *with* Tr. 106:15–18 ("It's a silver revolver . . . a 44 Magnum with a black handle.").)  Although Petitioner contends that Bradley initially described the gun brandished during his robbery as an "automatic" gun, on cross-examination Bradley did not seem to be able to describe the difference between an automatic gun and a revolver, and did not recall telling the NYPD that the gun was automatic.  (Tr. 685:20–21 ("I don't know what type of gun it was.  I don't recall telling him what type of gun it was."); 686:2–9.)  Further, the trial court

23

carefully instructed the jury separately on each element of each of the seven charges stemming from the two arrests. (*See generally* Tr. 978–1021, 1028:9–1029:18, 1054:17–1058:8.) *Burke v. Smith*, No. 07-CV-3098 (NG), 2012 WL 2394718 (E.D.N.Y. June 21, 2012) (denying joinder *habeas* claim where "[a]lthough the trial judge did not give specific instructions regarding the independent nature of each of the charges, he did instruct the jury as to each element of each charge separately.").

Second, Petitioner's claims that joinder caused actual prejudice are based on speculation rather than evidence. *Rolling v. Fischer*, 433 F. Supp. 2d 336, 344 (S.D.N.Y. 2006) (denying *habeas* claim premised on "mere speculation" that joinder caused prejudice). Since Petitioner provides no proof that he was actually prejudiced by the denials of his severance motions, his claim is denied. *See e.g.*, *Matthews v. Artuz*, No. 97-CV-3334 (DC), 1999 WL 349694, at *4 (S.D.N.Y. May 27, 1999) ("Here, petitioner's claim fails on the merits because he cannot demonstrate actual prejudice."). Petitioner has not shown—and would be hard-pressed to show, given the surveillance video and witness testimony identifying him at both the robbery and with the stolen car and recovered firearm—that, "but for the joint trial, he would have been acquitted of the charges arising from either of the two incidents." *McCall*, 2008 WL 4501834, at *10.

For the foregoing reasons, Petitioner fails to carry his "onerous burden" of demonstrating actual prejudice as a result of the consolidation of his two sets of charges into a single indictment and for trial. *Herring*, 11 F.3d at 378. Therefore, *habeas* relief is denied on this ground.

## IV.   Petitioner's Claim Based on the Failure to Give a Missing Witness Charge Is Meritless

Petitioner argues that his right to a fair trial was violated when the trial court denied his motion for a "missing witness charge"—i.e., an instruction that the jury could draw an adverse inference from the state's failure to call a witness in their control—regarding Bobby Garcia. (Dkt.

1, at ECF 8.)  Petitioner raised this claim at the end of the presentation of all of the evidence at trial (Tr. 879), and again on direct appeal (Record, at ECF 37–43).  The Appellate Division held that the request was untimely, and that Petitioner had failed to show that Garcia was knowledgeable about a material issue in the case and would have provided non-cumulative testimony.  *Fields,* 166 A.D.3d at 897.

While the failure to provide a missing witness charge is a matter of state law and is therefore not cognizable under federal *habeas* review, *Estelle*, 502 U.S. at 67–68, federal courts may consider whether the failure to provide the missing witness charge violated a petitioner's constitutional rights.  *Bisnauth v. Morton*, No. 18-CV-4899 (JFB), 2021 WL 3492746, at *14 (E.D.N.Y. Aug. 9, 2021).  *Habeas* relief is available only if the trial court's failure to provide a missing witness charge "so infected the entire trial that the resulting conviction violated due process."  *Klosin v. Conway*, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting *Cupp* v. *Naughten*, 414 U.S. 141, 147 (1973)).  Further, "[w]here, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden . . . especially heavy.'"  *Crews v. Herbert*, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Under New York law, the decision to give a missing witness charge to the jury is at the discretion of the trial judge.  *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992).  To obtain a missing witness charge, the party requesting the charge bears the burden of establishing that (1) "the witness's knowledge [is] material to the trial"; (2) "the witness [is] expected to give noncumulative testimony favorable to the party against whom the charge is sought"; and (3) "the witness [is] available to that party."  *Zimmerman v. Conway*, No. 10-CV-1393 (ER) (PED), 2018

WL 6413144, at *6 (S.D.N.Y. Dec. 6, 2018) (quoting *People v. Savinon*, 100 N.Y.2d 192, 197 (2003)).

Here, Petitioner fails to show that the trial court abused its discretion by failing to give a missing witness charge as to Garcia.  Petitioner contends that the allegedly "missing witness," Garcia, should have been produced to testify regarding Bradley's physical condition after the robbery—an issue material to one of the second degree robbery charges, which required proof that the complaining witness suffered "physical injury," N.Y. Penal Law § 160.10(2)(a)—and that Garcia's testimony would have been non-cumulative because there was no other witness besides Bradley to testify about his physical condition.  Notably, Petitioner does not explain how Garcia would have testified regarding Bradley's injuries or even if Garcia could have testified about that subject.  Petitioner therefore cannot demonstrate that Garcia's testimony would have been probative or helpful to the jury, whether it would have been non-cumulative of Bradley's own testimony, or whether it would have been favorable to Petitioner.  *Arena*, 952 F. Supp. 2d at 489 ("A missing witness charge is not appropriate when the witness's testimony would merely corroborate the testimony of other witnesses." (citing *People v. Keen*, 94 N.Y.2d 533, 539 (2000)).  Further, there is no indication that Garcia was available to the prosecution; indeed, Bradley repeatedly testified that he had not been in touch with Garcia since the day he was robbed in Garcia's lobby.  Thus, Petitioner fails to demonstrate that the Appellate Division erred in finding that the trial court did not abuse its discretion in denying his requests for a missing witness charge.

Even assuming *arguendo* that the trial court erred by not giving the missing witness charge, Petitioner has not demonstrated that this error "so infected the entire trial that the resulting conviction violated due process." *Klosin*, 501 F. Supp. 2d at 444 (quoting *Cupp*, 414 U.S. at 147). Indeed, in the face of overwhelming evidence of Petitioner's guilt—e.g., surveillance video

footage, Bradley's line-up identifications of Petitioner and Senat, the recovery of a firearm from Petitioner and Senat similar to Bradley's description—Petitioner offers nothing to show that the absence of the missing witness charge as to Garcia so "infected the entire trial" as to deprive Petitioner of due process.  Petitioner's claim—that the absence of Garcia's testimony as to one largely uncontested element of one charge so infected the entire trial that the resulting conviction on seven separate charges violated due process—is pure conjecture.  *Toland v. Walsh*, No. 04-CV-0773 (GLS), 2008 WL 65583, at *14–15 (N.D.N.Y. Jan. 4, 2008) (denying *habeas* relief where possibility that missing witness would give favorable testimony was "based upon nothing other than mere conjecture" and stating that "federal *habeas* relief cannot be granted upon claims that are rooted in speculation").  Therefore, *habeas* relief is denied as to Petitioner's missing witness charge claim.

## V.    Petitioner's Confrontation Clause Claim is Meritless

Lastly, Petitioner argues that his due process right to "confront his accuser" because the NYPD officer who had identified Petitioner on "a video of [the] alleged robbery" never came "to any form of the proceedings."[8]  (Dkt. 1, at ECF 10.)  The Court assumes that Petitioner's argument is that the NYPD officer, Sgt. Demma, should have testified at trial.  Petitioner first raised this claim on direct appeal, in his *pro se* supplemental brief, (Record, at ECF 53–57), and the Appellate Division held that it was unpreserved.  *Fields*, 166 A.D.3d at 898.  Petitioner's motion for leave to appeal to the New York Court of Appeals, which was denied, included this claim, and so the claim is exhausted even though he did not raise it in his 440 Motion.  *Watson v. New York*, No. 19-CV-0707 (CM), 2019 WL 6117711, at *2 (S.D.N.Y. Nov. 15, 2019) ("[A] petitioner need not give the

---

[8] At a pre-trial hearing, NYPD Detective Richard McCarty testified that he and one Sergeant ("Sgt.") Demma reviewed surveillance video from the date of the Bradley robbery, and Sgt. Demma indicated that he knew Petitioner "from a previous incident."  (Tr. 10:5–13.)

state court system more than one full opportunity to rule on his claims; if he has presented his claims to the highest state court on direct appeal he need not also seek collateral relief." (quoting *Daye v. Att'y Gen. of the State of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982))).

Petitioner's claim is procedurally barred by the Appellate Division's finding that he failed to preserve the issue for appeal. *Davila*, 582 U.S. at 527. As discussed *supra,* New York State's preservation rule is "a firmly established and regularly followed New York procedural rule," and is therefore an independent and adequate state ground foreclosing federal *habeas* review. *Downs*, 657 F.3d at 104. The Appellate Division relied solely on this procedural ground for its determination. *Fields*, 166 A.D. 3d at 898. Although the Appellate Division ruling simply stated that "[t]he defendant's remaining contentions, including those raised in his pro se supplemental brief, are unpreserved for appellate review, . . . and we decline to consider them in the interest of justice," *id*. (internal citations omitted), and did not specifically reference the contemporaneous-objection rule, the Appellate Division's decision is sufficient to foreclose federal *habeas* review. *See Wade*, 2023 WL 2152489, at *11 (finding a claim procedurally barred for federal *habeas* review where the Appellate Division "declined to review . . . based on lack of preservation," but failed to cite the contemporaneous-objection rule statute, C.P.L. § 470.05(2)).

With respect to this claim, Petitioner argued in his *pro se* motion for reconsideration of his application for leave to appeal to the Court of Appeals that "[t]he failure of defendant to object at trial, to the identification by Sgt. Demma is hardly a waiver, since defendant made an appropriate pretrial motion to suppress the identification" and "no purpose would be served by renewing it [at] trial." (Record, at ECF 293.) But Petitioner's pretrial motion to suppress the photo array and line-up identifications clearly did not involve the same issue he raised post-trial or raises now about Sgt. Demma not testifying at trial about his identification of Petitioner. (*See* Record at ECF 166

(Petitioner moving to suppress the photo array as suggestive); Tr. 148–52 (denying Defendants' suppression motions on grounds that they are "reasonably enough non-suggestive").)  "New York's highest courts uniformly instruct that to preserve a particular issue for appeal, [a] defendant must specifically focus on the alleged error."  *Garvey v. Duncan*, 485 F.3d 709, 714–15 (2d Cir. 2007) (collecting cases).  Thus, Petitioner simply did not preserve the argument that he should have been permitted to cross-examine Sgt. Demma at trial.

Finally, Petitioner's claim that Sgt. Demma's "testimony would have had a vital impact on the outcome of this case" (Record, at ECF 56–57) is purely speculative and fails to establish cause for default and actual prejudice, or a miscarriage of justice due to absolute innocence.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Therefore, Petitioner's claim is procedurally barred and denied.

## CONCLUSION

For the reasons explained above, the Court denies Petitioner's *habeas* petition in its entirety.  Moreover, the Court declines to issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to enter judgment accordingly.

<div style="margin-left:50%">

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

</div>

Dated: September 27, 2023
      Brooklyn, New York